IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAISY TACKETT                    )
                                      )
           Plaintiff,         )
                                        )
vs.                            )    Case No. 16-cv-2266-JTM-GEB
                                        )
UNIVERSITY OF KANSAS      )
                                        )
                                        )
         Defendants.      )

## RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Daisy Tackett brings Hostile Educational Environment and Retaliation claims against the University of Kansas under Title IX for three related incidents: First, a KU football player raped Daisy Tackett at a dorm, the Jayhawker Towers, that KU purposely placed football players knowing they would have less supervision there and that sexual assaults were a problem there, and indeed, a likely and predictable outcome. Second, after Daisy Tackett reported the rape to KU, KU failed to conduct an expedient investigation or to stop its football player from harassing her on campus, despite knowing such harassment was foreseeable and likely. Third, after Daisy Tackett reported her rape, and after she reported and objected to her male rowing coach's regular commentary about the physical appearance of his female rowers, her rowing coaches denied her access to rowing team activities.

KU's Motion to Dismiss should be denied because Daisy Tackett has pleaded adequate facts to support the elements of her two Title IX causes of actions.

## I.     Standard for Motion

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all the factual allegations in the complaint" and "construe them in a light most favorable to the plaintiff" and "resolve all reasonable inferences in plaintiff's favor." *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996). "Dismissal is inappropriate under Fed. R. Civ. P. 12(b)(6) unless the plaintiff can prove no set of facts in support of his claims to entitle him to relief." *Id.*

Fed.R.Civ.P. 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The Court considers whether Plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."*Id.* Pleading requirements in discrimination cases are more lenient. *See Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003).

Here, the well-pled facts establish sufficient bases to offer evidence to support Tackett's claims for Title IX hostile educational environment and retaliation.

## II.     Pleaded facts establish Count I: Hostile Educational Environment.

Title IX contains the following nondiscrimination mandate:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . .

20 U.S.C. § 1681(a). Sexual harassment "is a form of discrimination on the basis of sex and is actionable under Title IX." *Escue v. N. Okla. Coll.,* 450 F.3d 1146 (10th

Cir. 2006). Title IX may be enforced through civil damages suits where the university "has actual notice of the alleged discrimination and responds with deliberate indifference to that discrimination." *Gebser v. Labo Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998)(Title IX applied to teacher-on-student sexual harassment); *Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 642 (1999) (applying deliberate indifference standard to student-on-student harassment).

The school must be found to have acted with legal culpability known as "deliberate indifference." *See Id.* To state a claim under Title IX for student-on-student sexual harassment, a plaintiff must show that the school "(1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it … deprived the victim of access to the educational benefits or opportunities provided by the school." *Murrell v. Sch. Dist. No. 1, Denver, Colo.,* 186 F.3d 1238, 1246 (10th Cir. 1999).

Alternatively, the Tenth Circuit has defined another three-element formula for pleading a Title IX cause of action: "To state a cause of action under Title IX, a plaintiff must show: (1) that … she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal assistance; and (3) that the exclusion from the program was on the basis of sex." *Seamons*, 84 F.3d at 1232.

Finally, in *Simpson v. University of Colorado Boulder*, 500 F.3d 1170 (10th Cir. 2007), the Tenth Circuit extended Title IX liability to situations where (1) a "funding recipient" (2) possesses an "official policy" of "deliberate indifference to

providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient." *Id.* at 1178; *See also C.T. v. Liberal School Dist.*, 562 F.Supp.2d 1324, 1338-39 (D.Kan. 2008)(summarizing *Simpson*); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Daisy Tackett has pleaded facts that support all three elements of a Title IX hostile educational environment under *Murrell*, *Seamons* and *Simpson*.

### A. Plaintiff's pleaded facts establish all three *Murrell* elements.

Regarding the first *Murrell* element, she has pleaded facts that demonstrate KU had "actual knowledge" of harassment that can be sub-divided into six categories of actual knowledge:

1. **Actual Knowledge of an Increased Chance that Female Students Will Be Sexually Assaulted at the Athletic Dorm, Jayhawker Towers.** Daisy Tackett pleaded that KU had an official policy of placing KU athletes, particularly KU football players, in KU's Jayhawker Towers, where they would receive less supervision that other residence hall options. *See* Petition, Par. 63. KU knew that sexual assaults were occurring at a higher rate at Jayhawker Towers than at other residence halls. *See* Petition, Par. 64. In the year preceding Daisy Tackett's rape, as many as three *reported* sexual assaults of females occurred at the Jayhawker Towers – and according to KU officials, there were likely 24 more.[1] *See* Petition, Par. 11.

---

[1] The favorable inference from the fact that three sexual assaults were *reported* in this dorm is that there were many more *unreported* assaults. In October of 2014, the co-chairwoman of KU's taskforce to address the sexual assault crisis on campus, told the Associated Press regarding the true number of sexual assaults taking place at KU: "If you look statistically across the nation on average for each assault reported, eight go unreported." Plaintiff will move to amend the complaint to make this inference explicit.

Plaintiff has adequately pleaded facts showing that KU had actual knowledge of its policy to place athletes in a particular dorm with less supervision, and that this policy had, for years, produced numerous sexual assaults against women.

2. **Actual Knowledge of Daisy Tackett's Rape and Participation in the Investigative Process.** Daisy Tackett pleaded that in October, 2015, she reported her rape to KU to at least the following six KU officials: (1) the KU rowing team's trainer; (2) a KU Athletics Department physician; (3) KU Senior Woman Administrator Debbie Van Saun; (4) KU's Institutional Opportunity & Access ("IOA") office; (5) and an assistant KU rowing coach. *See* Petition, Par. 31-35.

In addition, (6) head rowing Coach Catloth knew of her rape and participation in the Title IX investigative process.[2] Daisy told Coach Catloth's assistant, Coach Callen, that she had to attend an IOA meeting as part of IOA's investigation into her report, and that she would have to miss a practice. *See* Petition, Par. 34-35. Callen told her she needed to tell Coach Catloth, so Daisy Tackett informed him that she had to miss a practice to attend an IOA investigation meeting; in December of 2015, she personally provided him the details about why – that she was raped. *See* Petition, Par. 31-36.

KU therefore had actual knowledge by October, 2015, at the latest that a KU football player had raped Daisy Tackett at the Jayhawker Towers. Moreover, KU

---

[2] The favorable inference to be drawn from Plaintiff's pleading is that Coach Catloth had actual knowledge of Daisy Tackett's rape and participation in Title IX activity by October of 2015, given that at least five other KU officials involved with the rowing team knew and were acting on the report, as well as other student members of the rowing team. Plaintiff will move to amend the complaint to make this inference an explicitly pleaded fact.

also had actual knowledge that another KU rower had also reported a sexual assault involving the same KU football player at Jayhawker Towers. *See* Petition, Par. 30.[3] Finally, the same KU officials also knew by October of 2015 at the latest that Tackett was participating in KU's investigation into her rape.

3. **Actual Knowledge of First Instance of Witness Tampering/Intimidation.** Following Daisy Tackett's October 2015 report, the KU football player appeared at a secluded part of campus and began staring her down in an act of intimidation. *See* Petition, Par. 38. Daisy immediately told KU about the witness intimidation tactic. *See* Petition, Par. 39. Therefore, KU had actual knowledge that a KU football player was attempting to intimidate her on campus. Moreover, KU officials foresaw that she would be subjected to intimidation and harassment after she made her report because the Department of Education in 2011 had informed them that such post-report intimidation and harassment was distinctly possible.[4]

4. **Actual Knowledge of Second Instance of Witness Tampering/Intimidation.** Later that week, the same KU football player again showed up on campus after one of Daisy Tackett's classes, and again engaged in intimidating behavior, including calling her a derogatory name. *See* Petition, Par. 40. Tackett again immediately

---

[3] Actual notice can be established by reports of inappropriate physical conduct with a student and mere rumors of other inappropriate conduct. *See Doe v. School Administrative Dist. No. 19,* 66 F.Supp 57, 63 (D.Me.1999).

[4] "Schools should be aware that complaints of sexual harassment or violence may be followed by retaliation by the alleged perpetrator or his or her associates. For instance, friends of the alleged perpetrator may subject the complainant to name-calling and taunting." – Ex. 1, April 4, 2011 Ed. Dept. Dear Colleague Letter, p. 16.

reported the conduct to KU. *See* Petition, Par. 41. It bears repeating: KU already knew this was a foreseeable event. *See* Ex 1.

5. **Actual Knowledge of Coach Catloth's Retaliatory Conduct against Daisy.** After coaches learned about her rape, they began systematically denying her opportunities to participate on the rowing team. *See* Petition, Par. 43-58. Daisy Tackett reported Coach Catloth's retaliatory conduct to KU. *Id.*

6. **Actual Knowledge of Coach Catloth's Prior Gender-based Discrimination against Rowing Team Members.** Daisy Tackett has pleaded that by early October 2015[5], at the latest, KU officials knew that Coach Catloth had a history of making frequent, widespread comments about how "fat" female rowing team members were. *See* Petition, Par. 23-29. Prior to October, 2015, female team member had reported his conduct to KU's "Senior Woman Administrator," whose duties included monitoring Title IX compliance and gender equity. *See* Petition, Par. 24-25. Vulgar comments about body weight directed predominantly at female employees can constitute sexual harassment. *Kopp v. Samaritan Health System, Inc.*, 13 F.3d 264, 269-70 (8th Cir. 1993); *Jennings v. University of North Carolina*, 482 F.3d 686, 695 (4th Cir. 2007)(Title VII may be used for guidance in Title IX claims). In this case, Coach Catloth's comments were not predominantly about women under his supervision – they were entirely about women under his supervision.

---

[5] The Petition erroneously states "2016" – a date in the future. Plaintiff will move to amend the petition to properly state the year, 2015.

Moreover, Plaintiff has sought to amend her petition to include newly discovered facts concerning KU's actual knowledge of Coach Catloth's history of Title IX gender discrimination, including:

- KU officials had actual knowledge that, prior to October 2015, KU medical staff had attempted to implement a policy requiring Coach Catloth to refer female rowing teams members to a nutritionist if he viewed their weight as a performance issue, instead of calling them "fat."

- KU officials had actual knowledge that Coach Catloth was not abiding by the policy.

- KU officials, including Debbie Van Saun, the administrator who was supposed to have the duty to monitor Title IX compliance and gender equity, chose not to make Coach Catloth comply with the policy.

All of these pleadings, which must be accepted as true, establish that KU officials knew gender-based discrimination had occurred involving Daisy Tackett and the rest of the female KU rowing team.

Daisy Tackett has also pleaded *Murrell*'s *third* element, that the harassment she suffered was severe and offensive enough to deprive her of an educational benefit of opportunity.[6] The U.S. District Court of New Mexico recently summarized the law on the subject in *Spencer v. University of New Mexico Board of Regents,* No. 15-CV-141 MCA/SCY (January 11, 2016):

- "A single act of severe sexual harassment—particularly a rape …. can support a Title IX claim where the claim is premised upon the school's response to the report of the incident of sexual harassment." (*citing Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 259, n.4 (6th Cir. 2000) and *S.S. v. Alexander*, 177 P.3d 724, 739 (Wash. Ct. App. 2008).

- "In the context of Title IX, "there is no 'one free rape' rule"; and a victim does not have to be raped twice before the school is required to respond appropriately." (*citing SS.,* 177 P.3d at 741.)

---

[6]For ease of discussion, *Murrell*'s second element, deliberate indifference, will be addressed last.

- "A jury may conclude that harassment is severe, pervasive, and objectively offensive from evidence that a student who is known to have perpetrated a sexual assault upon another student is permitted to continue attending the same school as the victim, leaving open the potential for interactions between the two." (*citing Doe ex rel. Doe v. Derby Bd. of Educ.,* 451 F.Supp.2d 438, 444 (D. Conn. 2006)).

- "[A] reasonable jury [may] conclude that further encounters, of any sort, between a rape victim and her attacker could create an environment sufficiently hostile to deprive the victim of access to educational opportunities provided by a university." (*quoting Kelly v. Yale Univ.,* No. 3:01-CV-1591, 2003 WL 1563424, at *3 (D. Conn. 2003).

- "[W]here the victim of student-on-student sexual harassment whose report of a rape was met with deliberate indifference by the school *voluntarily* withdraws from school to avoid exposure to further harassment, the voluntary withdrawal may yet support a finding that the school 'effectively barred her access to an educational opportunity[.]'"(*quoting Williams v. Bd. of Regents of Univ. Sys. of Georgia,* 477 F.3d 1282, 1296-98 (11th Cir. 2007)).

Daisy Tackett pleaded a KU football player raped her in a dorm reserved for athletes that KU knew had a problem with sexual assaults and where residents were less supervised; that she was twice intimidated by the same KU football player on campus after she reported the rape; forced off her rowing team by KU rowing coaches; that KU continued to allow her rapist on campus; and that she ultimately had no choice but to withdraw from KU. *See* Petition, Par. 18, 38-41, 43, 45-52, 54, 56. Moreover, she has pleaded that she was not the only female student to be sexually assaulted by a KU football player at Jayhawker Towers only in the last three years. *See* Petition, Par.11, 30. These are pleadings – a rape, subsequent acts of intimidation by the KU football player, ultimate withdrawal from the university – that would clearly substantiate that the harassment KU permitted Daisy Tackett

to suffer in order to offer perks to football players was severe, pervasive and completely offensive. *See Spencer.*

She further pleaded facts that showed that harassment she suffered from KU's football player and her rowing team coaches *actually did deprive her of educational opportunities.* After reporting her rape, and after KU's failure to protect her from the KU football player, Daisy Tackett's panic attacks during practices at KU's football facility worsened. *See* Petition, Par.44. She began to withdraw from campus life, avoiding facilities and dining halls where she might encounter the KU football player and his friends. *See* Petition, Par. 45. Her rowing coaches refused to permit her to participate in team activities, despite passing extra testing Coach Catloth made her perform. *See* Petition, Par. 45-49. Her rowing coach would not let her transfer to another rowing team. *See* Petition, Par. 51. Ultimately, Daisy Tackett had to withdraw from KU after KU's investigation into her complaint dragged out nearly five months. *See* Petition, Par.54, 56. These pleaded facts show that KU's conduct deliberately denied her access to KU's campus, education and programming.

Finally, *Murrell*'s second element – that KU must display "deliberate indifference" to the harassment Daisy Tackett suffered – has also been pleaded adequately. *Murrell* at 1246. To show "deliberate indifference," KU must have acted in a clearly unreasonable manner. *Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 646-647 (1999). A response is "clearly unreasonable" when it is not calculated to be effective, or when repeated harassment demonstrates that it has not been

effective. *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 262 (6th Cir. 2000); OCR Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 62 Fed. Reg. 12034 (Mar. 13, 1997)("the "OCR Guidelines"). Title IX "does not require specific responses [but] it does require a reasonable response once a school receives actual notice of a substantial risk." *Id.* A response is also "clearly unreasonable" where the response makes the student more vulnerable to harassment. *Davis,* 526 U.S. at 645. A "minimalist response is not within the contemplation of a reasonable response." *Escue*, 450 F.3d at 1155 (citing *Vance*, 231 F.3d at 260). *See also BPS v. Board of Trustees For Colorado School for The Deaf and Blind*, 12-cv-02664-RM-KLM (D.Colo. September 16, 2015). Deliberate indifference prior to a sexual assault that makes a student more vulnerable to an attack, or deliberate indifference after a sexual assault that results in additional harassment, is actionable. *Ross v. Corp. of Mercer Univ.*, 506 F.Supp.2d 1325, 1346 (M.D. Ga. 2007).

Daisy Tackett pleaded facts that show that KU officials were deliberately indifferent to the sexual harassment she endured. She has pleaded:

**1. KU was deliberately indifference to the increased chance of Daisy Tackett being raped at the Jayhawker Towers.** Even though KU knew that young women were being sexually assaulted at Jayhawker Towers regularly, it continued to act with deliberate indifference to those assaults by advertising the dorm as "safe" and secure. *See* Petition, Par. 11-14. It continued to place a disproportionate number of KU football players at the Jayhawker Towers knowing full well they would have

less supervision there, and knowing there was a high likelihood of sexual misconduct occurring. *See* Petition, Par. 63-68, 74(a).

**2.   KU was deliberately indifferent to known threats of sexual assault posed by its athletes at Jayhawker Towers.** The sexual assault of Daisy Tackett was preventable; KU knew assaults occurred routinely at Jayhawker Towers, yet they failed to train their employees properly on preventing, investigating and punishing sexual assaults on campus, and failing to adopt simple, reasonable policies that would lessen the chance of rapes occurring again. *See* Petition, Par. 63-66, 74(b).

**3.   KU was deliberately indifferent to Daisy Tackett's sexual assault because it knew she would likely be subjected to harassment and intimidation when she filed her report, but did not take steps to stop it.** KU chose not to suspend, ban from campus or even issue a "no-contact" order to her assailant until he was able to twice intimidate her on campus, even after a second young woman reported being sexually assaulted by the same football player. *See* Petition, Par. 74(c)-(e), (h). By the time KU issued a "no contact" order, the damage was already done.

**4.   Similarly, KU did not hold a hearing to resolve Daisy Tackett's report for nearly five months – a length of time that evinces deliberate indifference to the impact the length of the investigation was having on Tackett and her ability to study and participate as a student at KU.** A "lengthy and unjustified delay" in implementing remedial action can establish "deliberate indifference." *Hayut v. State University of New York*, 352 F.3d 733, 751 (2d Cir. 2003); *See Davis*, 526 U.S. at 649 (failure to respond to complaints from plaintiff and other students for five

months could establish "deliberate indifference."). KU is aware that in 2011, the Education Department stated that "a typical investigation takes approximately 60 calendar days following receipt of the complaint."[7]

**5.   KU officials were deliberately indifferent because they refused to investigate Daisy Tackett's report that Coach Catloth was retaliating against her for participating in the Title IX process.** *See* Petition, Par. 58, 74(i);  *See Murrell,* 186 F.3d at 1243-1248; (holding failure to investigate amounted to deliberate indifference); *Vance*, 231 F.3d at 262 (failure to investigate one of several incidents of reported harassment reflected "deliberate indifference.")

**6.   KU was deliberately indifferent when it repeatedly refused to investigate or take remedial action regarding Daisy Tackett and other female rowing team members' reports that Coach Catloth repeatedly called them "fat."**  *See* Petition, Par. 23-29, 55, 74(g). Tackett pleaded that several KU rowers had reported to Debbie Van Saun, the KU official who was appointed to monitor Title IX compliance and gender equity, that Coach Catloth frequently made "fat" comments about the rowers; that Van Saun and KU refused to investigate or act on the comments; that Van Saun and Coach Catloth responded to these reports by forcing the players to tell Coach Catloth in person their complaints; that Daisy Tackett was one of these women who then had to confront Coach Catloth and Van Saun personally in front of

---

[7] Ex. 1, April 4, 2011 Ed. Dept. Dear Colleague Letter, p. 12.

her peers; and that Coach Catloth shortly thereafter prevented Daisy Tackett from participating in the rowing team trip, even though she qualified for the trip. *Id.*[8]

Plaintiff has further sought to amend the petition to include newly discovered facts that KU deliberately decided not to implement a policy proposed by medical personnel to stop Coach Catloth from making derogative comments about the weight of his female athletes. No response, a minimal response, or in this case, actual encouragement of Coach Catloth's gender-based discrimination amounts to deliberate indifference. *See Simpson v. University of Colorado Boulder*, 500 F.3d 1170, 1177-1179 (10th Cir. 2007)(institutional encouragement of discrimination can be "deliberate indifference," as can an official policy of discrimination or a policy of deliberate indifference to implementing a program designed to address discrimination).

*Summary:* Plaintiff has fully pleaded facts that establish all three elements of a Title IX claim under the Tenth Circuit case *Murrell*. She should be permitted to proceed forward in her case based on these pleadings.

B. **Plaintiff's pleaded facts establish all three *Seamons* elements.**

In the *Seamons* case, the Tenth Circuit stated that a Title IX plaintiff must prove "(1) that … she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program

---

[8] In the case Doe 7 v. University of Kansas, 2:16-cv-02458-JAR-GLR, which was removed to this Court on June 24, 2016, another KU rower  similarly alleges that Coach Catloth blocked her from participating in the same rowing team activities. *See ECF Doc, #1, Attachment 1, Petition, Par. 85.* Plaintiff has moved to amend her petition to include allegations that KU and its rowing coaches treated the other rower sexually assaulted by the same KU football player, in a substantially similar manner.

receives federal assistance; and (3) that the exclusion from the program was on the basis of sex." *Seamons*, 84 F.3d at 1232.

Daisy Tackett's pleaded facts also show that she can prove a set of facts that establish Title IX liability under *Seamons*.

**(1) She has pleaded that KU excluded her rowing team activities and that she ultimately had to withdraw from the school and team.** *See* Petition, Par. 43-56.

**(2) She has pleaded that KU receives federal assistance.** *See* Petition, Par. 4.

**(3) She has pleaded facts demonstrating that she was excluded on the basis of "sex."** *See* Petition, Par. 11-13, 31, 33, 36, 39, 36-41, 45-46, 58, 63-66. Sexual harassment is a form of sexual discrimination to which Title IX applies. *Escue*, 450 F.3d at 1152; *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 75 (1992). Plaintiff pleaded that KU had actual knowledge that it had a policy of placing football players in Jayhawker Towers knowing that sexual assault occurred frequently there; that Daisy Tackett had been raped by a KU football player at the Jayhawker Towers; that she was participating in the Title IX investigation; that she had twice been intimidated by the football player on campus following her report; that she had opposed her male coach's practice of calling female rowers "fat;" and that she had reported his conduct as retaliation. *See* Petition, Par. 11-13, 31, 33, 36, 39, 36-41, 45-46, 58, 63-66. She further pleaded that KU's policies, failure to timely investigate, failure to timely take remedial action, failure to stop Coach Catloth from making inappropriate appearance comments to female rowers, and failure to stop him from retaliating against her for participating in Title IX protected activity.

*See* Petition, Par.74, 86. She pleaded facts showing that there was a causal relationship between KU's exclusion of her from educational opportunities and the sexual harassment and Title IX retaliation she suffered. *See* Petition, Par.74, 76, 86 – 87. She has more than adequately pleaded facts showing that she was denied an educational opportunity on the basis of sex.

*Summary:* Daisy Tackett has pleaded facts that must be taken as true that show KU received federal funds, denied her educational opportunities, and that KU's denial was related to sex (both in the form of the rape she suffered, and in the form of her opposition to Coach Catloth's discriminatory and retaliatory conduct). Defendant's Motion to Dismiss should therefore be denied.

C. **Pleaded facts establish *Simpson* liability**

In *Simpson,* the Tenth Circuit extended Title IX liability to situations where (1) a "funding recipient:" (2) possesses an "official policy" of "deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient." *Simpson,* 500 F.3d. at 1178. The plaintiffs in *Simpson* were sexually assaulted by football players and high school football recruits visiting the university's football program. Plaintiffs claimed, under Title IX, that the university knew of the risk of sexual harassment of female students in connection with the football recruiting program and that it failed to take any action to prevent further harassment before their assaults. *Id.* at 1174. The court held that summary judgment was erroneously granted for the university where facts showed university officials had knowledge of prior rapes and

harassment in the context of the recruiting program, even though those prior acts were not committed against the same plaintiffs or by the same perpetrators. In so doing, the Tenth Circuit distinguished the claims at issue in *Gebser* and *Davis* from the claims at issue in *Simpson,* as follows:

> **We find it significant that in those cases there was no element of encouragement of the misconduct by the school district.** To be sure, in those cases the school district could anticipate that the very operation of a school would be accompanied by sexual harassment, but that is simply because, unfortunately, some flawed humans will engage in such misconduct when they are in the company of others. Here, however, the gist of the complaint is that CU sanctioned, supported, even funded, a program (showing recruits a "good time") that, without proper control, would encourage young men to engage in opprobrious acts. We do not think that the notice standards established for sexual-harassment claims in *Gebser* and *Davis* necessarily apply in this circumstance.

*Id.* at 1177 (emphasis added).

*Simpson* recognized that "[i]mplementation of an official policy can certainly be a circumstance in which the recipient exercises significant 'control over the harasser and the environment in which the harassment occurs.'" *Id.* at 1178 (quoting *Davis,* 526 U.S. at 644). A funding recipient may be liable under Title IX when a violation is caused by a "policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient." *Simpson* at 1178.

The United States District Court for the Southern District of New York denied a university's motion to dismiss a plaintiff's Title IX claims in *Tubbs v. Stony Brook University*, No. 15 Civ 0517 (SDNY 2016). There, on facts strikingly similar to Daisy Tackett's facts, plaintiff alleged that the university was deliberately

indifferent in responding to prior sexual assaults, "thus signaling to the campus community that sexual misconduct is not seriously addressed and leaving students liable or vulnerable to such misconduct on campus." *Id.* The university's knowledge of a pre-existing increase of campus sexual assaults, combined with the university's "official policy" of failing to adequately respond to on-campus sexual violence and its failure to remedy those deficiencies, satisfied the deliberate indifference standard imposed by Title IX.[9]

In this case, Daisy Tackett has pleaded facts that substantiate Title IX liability under *Simpson*. First, she has pleaded that KU is a "funding recipient." *See* Petition, Par. 4.

Second, she has pleaded specific facts in excess of what is required under the Fed. R. Civ. P. 8(a) that KU possessed an "official policy" of fostering sexual abuse of its female students as well as a "deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient." *Simpson*, 500 F.3d. at 1178.

---

[9] *See also Doe v. University of Tennessee*, Case No. 3:16-cv-00199 (M.D. Tenn., May 3, 2016), where the district court applied *Simpson* and found two potential grounds for establishing Title IX liability for the "before" or "pre-assault" claims:

> First, in line with *Davis* and *Vance,* the plaintiffs have alleged that UT had actual knowledge of prior incidents of sexual assault by UT football and basketball players that were sufficient to put UT on notice of the risk to the plaintiffs, yet UT was deliberately indifferent in failing to adequately address this risk, including failing to change its remedial measures which were not effective. Second, under the theory advanced in *Simpson,* which extends *Gebser* and *Davis* to permit Title IX liability to arise from official policies of funding recipients, the FAC has alleged a number of official policies by UT that rendered the plaintiffs vulnerable to assault.

**1. Pleaded facts show KU possessed an official policy that resulted in the rape of Daisy Tackett.** Tackett pleaded that KU knew that its Jayhawker Towers apartments had a specific history of sexual assaults against women, providing specific examples only from 2013 forward. *See* Petition, Par. 11. KU's police chief for 38 years had stated that in recent years, sexual assaults had increased, and that sexual assaults remained the largest issue for the campus. *See* Petition, Par. 12. KU's own reporting shows that reported sexual assaults in its dorms has been trending up in recent years. *See* Petition, Par. 13. Despite this, KU continued to represent its dorms, including Jayhawker Towers, as "safe." *See* Petition, Par. 14. KU knew that sexual assaults were occurring at a high rate at Jayhawker Towers. *See* Petition, Par. 64.

Despite this knowledge of the dangers posed by Jayhawker Towers to young women at KU, KU "had an official policy of placing KU athletes, in particular KU football players, in KU's Jayhawker Towers Apartments, where they would receive less supervision than other residence hall options." *See* Petition, Par. 63. KU purposely provided inadequate supervision, warnings, training, guidance and education to its athletes and KU football players at Jayhawker Towers. *See* Petition, Par. 65. Daisy Tackett pled that KU's policy of providing this perk to KU football players for the price of women's safety created a likelihood of misconduct so obvious that it amounted to deliberate indifference to what would happen to Daisy Tackett when she walked in to the Jayhawker Towers. *See* Petition, Par. 66, 74(a)-(b).  These allegations establish KU's *Simpson* liability for the rape Daisy Tackett

suffered.

2. **Pleaded facts, and favorable inference therefrom, show KU had an official policy of encouraging male coaches to make derogatory comments about the appearance of his female rowers.**   Daisy Tackett has also pleaded a related set of facts from which it should be inferred that KU exhibited "deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient" – namely the university's deliberate decision to permit Coach Catloth to continue to harangue his female rowers with invective concerning their physical appearance. *Simpson*, 500 F.3d. at 1178. Tackett has pleaded that KU's rowing coach made ongoing and numerous statements that various female rowers were fat.  *See* Petition, Par. 24. These comments were reported to KU's Senior Woman Administrator Debbie Van Saun, whose responsibility was to oversee Title IX compliance and gender equity, but she did nothing. *See* Petition, Par.25-27.

Moreover, Daisy Tackett has moved to amend her petition to include newly discovered facts that KU's medical staff has previously recommended a policy that Coach Catloth refrain from calling his female rowers fat, and instead refer any athlete he believed to have a weight issue to a staff nutritionist. KU's administrator, Van Saun, deliberately refused to acknowledge the policy, properly train the coaches or enforce the policy, even when confronted with numerous additional complaints. Daisy Tackett participated in objecting to Coach Catloth's conduct – and it was her alleged failure to perform "body weight exercises" that

Coach Catloth cited as the reason why he was excluding her from rowing activities. *See* Petition, Par. 29, 55. The "body weight" reason was not only insulting, it was false: Daisy Tackett had qualified to participate, and she was more experienced and faster than other women permitted to go. *See* Petition, Par.46-48.

These allegations show that KU, in addition to having a dangerous policy of concentrating football players at Jayhawker Towers with less supervision, also had a policy of permitting its male rowing coach to berate his female rowers about their physical appearance, and further, that it had a policy of being deliberately indifferent to attempts to rectify that demeaning, discriminatory policy.   KU's policies, as pleaded, and as will be proved, demonstrate it intentionally violated Title IX under *Simpson*. KU's motion to dismiss should therefore be denied.

## III.    Pleaded facts establish Count II: Title IX retaliation.

The Supreme Court recognized a cause of action for Title IX retaliation in *Jackson v. Birmingham Bd. of Ed.*, 544 US 167 (2005). There, the Court stated Title IX is a "broadly written general prohibition on discrimination…" *Jackson*, 544 U.S at 175.  Under Title IX, retaliation is a form of discrimination. *Jackson* at 173-174. The Supreme Court stated: "The statute is **broadly worded**; it does not require that the victim of the retaliation must also be the victim of the discrimination that is the subject of the original complaint." *Jackson*, 544 U.S at 179 (emphasis added).

The Tenth Circuit applies the Title VII framework to Title IX retaliation claims. *Gossett v. Okla. ex rel. Bd. Of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001)(Courts generally assess Title IX discrimination claims under

the same legal analysis as Title VII claims); *Emeldi v. Univ. of Or.*, 698 F.3d 715, 724-25 (9th Cir. 2012)(Title IX retaliation claims analyzed using Title VII framework.) Under Title VII, the elements of a retaliation claim are: (1) the employee "engaged in a protected opposition to discrimination", (2) the employee suffered an adverse action during or after his opposition, which a reasonable employee would have found to be materially adverse (meaning that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination"); and (3) there was a "causal connection . . . between the protected activity and the materially adverse action." *Miller v. BNSF Railway Company*, Case No. 14-2596-JAR-TJJ (D.Kan. May 17, 2016)(citing *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 & n.4 (10th Cir. 2007)).

In this case, Daisy Tackett has pleaded facts that establish all three elements for a prima facie case of retaliation.

### A. Pleaded facts show Daisy Tackett engaged in protected activity.

"Title IX empowers a woman student to complain, without fear of retaliation, that the educational establishment treats women unequally." Emeldi 698 F.3d at 725. Section (e) of 34 C.F.R. § 100.7 states:

> (e) *Intimidatory or retaliatory acts prohibited.* No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part. ….

In this matter, Daisy Tackett engaged in several forms of protected activity. *See* Petition, Par. 85. She has pleaded that she: (1) Reported her rape by a KU football

player to numerous KU officials, *See* Petition, Par. 31, 33, 36, 46; (2) Reported subsequent intimidation by the KU football player to KU officials, *See* Petition, Par.38-41; (3) Participated in the Title IX investigation, *See* Petition, Par.32-37; (4) Reported to KU officials that Coach Catloth should not be making critical comments regarding the female rowers' weight, *See* Petition, Par.29. Protected activity includes voicing informal complaints to superiors. *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). Daisy Tackett has pleaded facts that show numerous incidents of protected activity.

**B. Pleaded facts show Daisy Tackett suffered an adverse action.**

Under Title IX, a materially adverse action in a retaliation setting includes any action that might "dissuade[] a reasonable worker from making or supporting a charge of discrimination…." *Somoza v. University of Denver*, 513 F.3d 1206, 1213 (10th Cir. 2008)(quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). The Tenth Circuit construes the term "adverse action" liberally. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1219 (10th Cir 2013).

In this case, Daisy Tackett has pleaded facts showing that KU took action that adversely impacted her education, including: (1) Failing to stop acts of witness tampering; (2) Denied access to rowing team activities; (3) Acts to collect bills and equipment that she had been promised she would not have to return; (4) Refusal to permit her to participate in rowing at other schools; and (5) Placing holds upon her records. *See* Petition, Par. 37-40, 45, 48-52, 55, 57, 60-62, 86. These pleaded facts, and the reasonable inference derived therefrom, establish that KU took adverse

actions against her that deprived her of educational opportunities and would certainly deter other students from lodging complaints.

**C. Pleaded facts show a causal connection between protected activity and adverse action.**

A causal connection can be established by showing proximity between the protected activity and the adverse action. *Conroy v. Vilsack*, 707 F.3d 1163, 1182 (10th Cir. 2013)(noting that where less than six weeks separate protected activity and an adverse action, "temporal proximity alone will be sufficient to establish the requisite protected activity.") In this case, Daisy Tackett pleaded facts showing that her acts of protected activity and KU's adverse actions "occurred within days of one another." *See* Petition, Par 87 (a)-(e).

Failure to conduct a competent investigation is also evidence of a causal connection. *Zisumbo v. Ogden Regional Medical Center*, 801 F.3d 1185, 1201 (10th Cir. 2015). In this case, plaintiff pleaded that KU refused to investigate her reports that Coach Catloth was retaliating against her, and that he was making "fat" comments about his female rowers. *See* Petition, Par. 24-29, 58, 87.

A pattern of discrimination occurring soon after a protected activity can also establish a causal connection. *Marx v. Schuck Mkts. Inc.*, 76 F.3d 324, 329 (10th Cir. 1996). Daisy Tackett has pleaded facts showing that Coach Catloth, immediately and contemporaneous with Tackett's protected activities, began engaging in a pattern of discrimination designed to exclude her from the rowing team. *See* Petition, Par. 27-31, 45-52, 87.

In addition, Daisy Tackett has pleaded facts showing that KU's supposed reason for excluding her from the rowing team activities was pretextual. She objectively met Coach Catloth's stated requirements when she passed the time trial; she was more qualified that other women allowed to attend; there was an opening for her to go. *See* Petition, Par. 46-49, 52, 55.

### IV. Rebuttal to KU's "Questions Presented."

KU argues first that it is not liable under Title IX because it did not know that this specific KU football player has sexually assaulted Daisy Tackett, or presumably any other woman. KU's brief glaringly refuses to discuss the Tenth Circuit's leading case on this issue in *Simpson*, which states plainly that Title IX liability will lie against a University, even if did not have specific knowledge of a football player's threat, if the University actively encouraged programs that fostered the assaults in the first place. This is what Daisy Tackett has alleged.

KU also suggests that it was not "deliberately indifferent" because investigated her report, provided her an escort, and then expelled the football player. But KU's argument again leaves out important pleaded facts. First, Daisy pleaded that KU took nearly five months to complete its investigation – a delay that in and of itself violated Title IX guidance and deprived Daisy Tackett access to educational opportunities as she battled panic attacks on campus throughout the drawn-out affair. Second, Daisy pleaded that KU provided an escort *after* she suffered foreseeable, on-campus acts of intimidation by the same football player. And even then, it was just an escort between one class. *See* Petition, Par. 42. Third,

KU claims that Daisy Tackett pleaded no facts that would warrant a suspension or interim campus ban of the KU football player. KU ignores Tackett's pleaded facts that: (1) the KU football player had raped her; (2) the KU football player had twice tried to physically intimidate her on campus; and (3) KU knew that the football player had sexually assaulted another young woman on campus. *See* Petition, Par. 18, 31, 38-40, 74.  This is not a quibble with the punishment KU ultimately agreed to dole out to his KU football player (after permitting him to finish out the football season); it is a critique of KU's failure to implement specific available options to protect Daisy Tackett on campus and indeed the other women forced to bear the cost of KU's deliberate indifference.

KU argues next that KU Coach Catloth's racist comments and "fat" invective were not gender-related and so not actionable under Title IX.  KU's argument ignores the pleaded facts that Coach Catloth was male and that his ongoing, repeated "fat" comments about the appearance of his rowers concerned women. Notably, KU relies on matters outside the pleadings (i.e. a reference to a Wikipedia page about rowing) to argue that Coach Catloth was right to call his rowers "fat" because weight is a competitive consideration in the sport. This is improper on a motion to dismiss; and tellingly, KU chooses to omit other facts outside the pleadings, such as the fact that female rowers had for years complained to the KU's Title IX officials about Coach Catloth's conduct; that KU medical staff had proposed a policy to stop Catloth's practice by having him refer women whom he possess legitimate concerns about their weight to a nutritionist; and that despite this

proposal, KU officials permitted Coach Catloth to continue in his conduct. Finally, Coach Catloth again referenced Plaintiff's weight when he gave her his false reason for not letting her play on the team. *See* Petition, Par. 55. Vulgar comments about body weight directed predominantly at female employees can constitute sexual harassment. *Kopp*, 13 F.3d 264.

KU argues that it cannot be held liable for Coach Catloth's retaliatory conduct because plaintiff did not allege that he knew about her rape, and KU did not know about his retaliatory conduct until after Daisy Tackett had to quit KU. Again, this argument omits pleaded facts and relies heavily on impermissible inferences drawn in KU's favor. First, Plaintiff has pleaded facts establishing that Coach Catloth, his coaching staff, and relevant KU administrators knew about her rape before he started retaliating against her; and she will move to amend more if the inferences are not clear. *See* Petition, Par. 31-27, 88. But more importantly, KU ignores the pleaded fact that Coach Catloth clearly excluded Daisy Tackett from team activities after he forced her to tell him and KU's actual Title IX official that he was inappropriately concerned with his female rowers' weight.  *See* Petition, Par. 26-29, 87(c)-(d). Her report concerning his comments to Debbie Van Saun and Coach Catloth was also protected activity.

Next, KU cites to *Rubio v. Turner Unified School Dist. No. 202*, 523 F.Supp.2d 1242, 1253 (D. Kan. 2007) for the idea that Daisy had a duty to report her retaliation to KU before KU can be liable for it. *Rubio* is not a Title IX case, it is not a Title VII case, and it does not trump Tenth Circuit guidance to the contrary

27

that Title XI retaliation elements are the same as the elements for a Title VII case, which Daisy Tackett pled.

Moreover, KU certainly knew about Coach Catloth's retaliatory acts toward Daisy Tackett. She specifically alleged that KU administrator Debbie Van Saun deliberately failed to stop Coach Catloth from retaliating against Daisy Tackett. *See* Petition, Par. 87(d). Moreover, she will move to amend the petition to include additional allegations that KU administrators beyond the coaching staff knew that Coach Catloth was not permitting Daisy Tackett to participate.

**For instance, on December 9, 2015, counsel for Daisy Tackett emailed Joshua Jones, the Interim director of KU's Office of Institutional Opportunity and Access and informed him:**

> Daisy is a member of the KU rowing team. After she informed her coaches of her report and her need to participate in the investigation, her coaches indicated that they would not allow her to travel to a training session later this year. Today her coaches informed her that, despite her meeting every extra condition imposed upon her, she would not be permitted to travel with the team and that she should seek a transfer. Her coach said she could not transfer to any other Big 12 school.
> …
> The University's rowing coaches further had actual knowledge of Ms. Tackett's report of sexual assault involving a KU football player, the resulting emotional distress and counseling she has endured, and her brave decision to make her report and cooperate fully in the University's investigation, despite Mr. [redacted football player's name]'s continued proximity and threatening behavior. Yet the coaches have told Ms. Tackett she cannot participate in a training trip, despite Ms. Tackett's absolute compliance with her program's stated expectations. She is being treated differently than other rowers because of her report and participation in the investigation.

She did not leave KU until the next semester. *See* Petition, Par. 53.

KU argues next that despite the conduct of its rowing coach in excluding Ms. Tackett from her team, and despite the fact that its football player raped her, it was perfectly acceptable for it to seek to collect tuition payment from her. ("Plaintiff

withdrew from school. That withdrawal has natural consequences.") *See ECF Doc. 10,* p.25. But Daisy Tackett is pleading facts that show KU's conduct "has natural consequences" under Title IX – it cannot retaliate against her for participating in the Title IX process. KU omits any discussion of KU's demand for her return of used clothing items that Coach Catloth said she did not have to give back; or its holds it placed on her transcripts; or the actual demand for tuition reimbursement it sent Daisy. See Petition, Par. 57, 60-62. KU's collection efforts were not started four months after he protected activity – they were initiated the moment Daisy Tackett had to quit KU because KU was forcing her into an never-ending investigation and refusing to permit her to be on the rowing team. *Marx*, 76 F.3d at 329(ongoing pattern of harassment can establish causal connection). Moreover, there are not pleaded facts that would support KU's argument that the collection letters it sent Daisy Tackett's family was concerning financial aid.

### Conclusion

Plaintiff has fully pleaded facts that establish each element of a Title IX claim under the Tenth Circuit cases *Murrell*, *Seamons* and *Simpson*. She has also pleaded facts that establish each element of a Title IX claim for retaliation. She should be permitted to proceed forward in her case based on these pleadings.

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

Respectfully Submitted,


/s/ Dan Curry
Sarah A. Brown, KS# 12130
Dan Curry, KS#22750
Brown & Curry, LLC
406 West 34th Street, Suite 810
Kansas City, MO 64111
(816) 756-5458
(816) 666-9596 (FAX)
sarah@brownandcurry.com
dan@brownandcurry.com

ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2016 the foregoing document was served by the Court's electronic filing system upon the following parties of record:


Michael C. Leitch #19588
University of Kansas
245 Strong Hall
1450 Jayhawk Blvd.
Lawrence, Kansas 66045
Tel: (785) 864-3276
Fax: (785) 864-4617
mleitch@ku.edu

ATTORNEY FOR DEFENDANT

/s/ Sarah A. Brown
Attorney for Plaintiff