IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAISY TACKETT, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   Case No. 16-cv-2266-JTM-GEB |
| | ) |
| UNIVERSITY OF KANSAS, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT UNIVERSITY OF KANSAS' RESPONSE
TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED
COMPLAINT**

COMES NOW Defendant, the University of Kansas, through counsel, and responds to Plaintiff's Motion for Leave to File Second Amended Complaint:

**I.   NATURE OF THE CASE**

Plaintiff has moved for leave to amend her Complaint for a second time. The University of Kansas requests that such leave be denied as most of the proposed allegations have been known to Ms. Tackett for months and such allegations are futile to Ms. Tackett's claims.

Under Fed. R. Civ. P. 15, leave to amend is to be freely granted; yet, there are several recognized exceptions to this general rule. *Phelps v. Hamilton*, 166 F.R.D. 489, 490 (D. Kan. 1996) (noting that a trial court's refusal to grant leave to amend should normally be justified on such factors as futility of the amendment, a showing of undue delay, undue prejudice to the non-moving party, or bad faith of the moving party). "A proposed amendment is futile if the amended claim would be subject to dismissal." *Kansas v. United States*, 171 F. Supp. 3d 1145 (D. Kan. 2016) quoting *Carefusion 213, LLC*, 2010 WL 4004874, at *5. Similarly, "[w]here the party

seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1366 (10th Cir. 1993) quoting *Las Vegas Ice & Cold Storage Co. v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir. 1990) (internal quotations omitted); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad.").

### A. Standard of Liability Under Title IX

For Plaintiff to recover damages under Title IX based on the University's response to sexual harassment or sexual violence, she must show three elements:

1) the University remains deliberately indifferent to acts of sex-based harassment of which it has actual knowledge,

2) the harassment was reported to an appropriate person … with the authority to take corrective action to end the discrimination, and

3) the harassment was so severe, pervasive and objectively offensive that it . . . deprived the victim of access to the educational benefits or opportunities provided by the school.

*Escue v. N. Oklahoma College*, 450 F.3d 1146, 1152 (10th Cir. 2006) (citations omitted).  Schools cannot be held vicariously liable for acts of sexual harassment or violence committed by teachers or students on campus.  *See id.*  "This limited rule imposes liability only on those school[s] that choose to ignore Title IX's mandate for equal educational opportunities."  *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1247 (10th Cir. 1999).  Administrators need not engage in particular disciplinary action under Title IX; they must simply respond in a manner that is not

clearly unreasonable. *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1123 (10th Cir. 2008) (quotations omitted). Here, the proposed Second Amended Petition is futile: the proposed additional facts, many of which were known to Plaintiff and her attorney prior to her filing the initial complaint, will not ultimately alter her claims, and the Defendant will again be back in front of the Court filing a third motion to dismiss.

## II.     PROPOSED AMENDED FACTS

Plaintiff now seeks to amend her claim that the University was deliberately indifferent to her Title IX rights based on the events that took place surrounding the removal of John Doe G from the University. Plaintiff claims that the University misrepresented the terms of John Doe G's removal from the University because she believed he was being expelled when he instead withdrew, was banned for campus for 10 years, received a notation on his transcript, and remains ineligible to re-enroll. (See Proposed Exhibit 3, March 18, 2016 letter from University to Plaintiff and her counsel describing resolution of John Doe G's student conduct case). She also seems to suggest that the University misled her because a third party accepted John Doe G into a different school and allowed him to join that university's football team.

Allowing Plaintiff to file her Second Amended Complaint would be futile. First, the facts as to the claim of misrepresentation by the University are not supported by Plaintiff's own proposed exhibits. The March 2016 letters establish she was told at that time that John Doe G was "effectively expelled" and had withdrawn. Second, Plaintiff's theory ignores that the University, while choosing to consider the wishes of Plaintiff and Jane Doe 7, is the ultimate decision maker as to how to proceed against a student in a disciplinary hearing. Third, there is nothing to establish that the University's alleged deliberate indifference played any role in John Doe G later playing football at another university. Critically, all of the facts alleged by Plaintiff have been known or

should have been known to her since March 2016, with the exception that John Doe G was admitted to another school and allowed by that school to play football, which was neither caused by actions of the University of Kansas nor relevant to the environment on KU's campus.

Rather, the six proposed exhibits demonstrate that in March 2016, Plaintiff was told by the University that John Doe G had been effectively expelled, had withdrawn from the University, and was ineligible to ever re-enroll. While the result may not have been exactly what either Plaintiff or Jane Doe 7 wanted, the University was not deliberately indifferent to them when it acted to remove John Doe G from campus.

### A. Exhibit 1 and Exhibit 4, February 23, 2016 Letter from IOA to Plaintiff and March 2, 2016 Letter from IOA to Jane Doe 7[1]

First, Exhibit 1 and 4 are the IOA's letters to Plaintiff and Jane Doe 7, on February 23, 2016 and March 2, 2016, respectively. Each letter explains that the investigation had been completed and that IOA recommended the expulsion of John Doe G to the Office of Student Affairs.[2] Before expulsion or other similar disciplinary action can be taken, John Doe G was entitled to a hearing, which was to be conducted by Student Affairs. The IOA letters simply contain the department's recommendation to Student Affairs that John Doe G be expelled, but do not guarantee that his expulsion will be the result.

---

[1] The proposed exhibits are being addressed in chronological order, rather than numerical order.

[2] In Exhibit 4, IOA noted that, based on the preponderance of the evidence, there was sufficient evidence to demonstrate that John Doe G had violated University policies when he touched Jane Doe 7's breasts without her consent and that while that act alone might not have resulted in IOA recommending expulsion, in consideration of Plaintiff's complaint with IOA, IOA was recommending to Student Affairs that the student be expelled.

### B. Exhibit 2, March 16, 2016 Communications Between KU's Office of Student Affairs and Plaintiff's Counsel

Exhibit 2 describes the ongoing discussions on March 16, 2016, related to a possible resolution that would result in John Doe G's removal from the University without a formal hearing. Plaintiff points to part of a dialogue that occurred via phone and e-mail, reflecting ongoing discussions about potential resolutions.[3]  The March 16, 2016 e-mail message is not committal, rather it discusses possible remedies, *i.e.* "We *can* seek agreement for a 10-year ban." Not, "there is an agreement to a 10-year ban." The language does not indicate that there is any finality:  "[w]e *can* seek agreement for a 10-year ban," "the student *would* be removed and banned immediately. He *would not* finish the semester." Mr. Watson also explains to Plaintiff and her attorney that the University cannot fine John Doe G or otherwise award money damages to her against him and that it is contrary to KU practice to note expulsion for sexual assault.

### C. Exhibit 5, March 17, 2016 Communications Between KU's Office of Student Affairs and Jane Doe 7

The ongoing discussions continue the next day, March 17, 2016, as laid out in Proposed Exhibit 5.  Exhibit 5 is a partial copy of a message from Lance Watson to Jane Doe 7 explaining that "the respondent has requested to resolve the case without a hearing.  From my perspective, he is willing to *effectively agree* to everything we would seek in the hearing.  *It is within the University's discretion to resolve the case, but we did want to get your thoughts*." (Emphasis added).  Mr. Watson's e-mail to Jane Doe 7 continues:  "He will be effectively permanently expelled.  He will be immediately withdrawn and not eligible for readmission to the University."

---

[3] Proposed Exhibit 2 is part of a series of communications exchanged between Lance Watson, Director of Student Conduct and Community Standards for the Office of Student Affairs and Plaintiff's counsel.  The communications originated as the University provided her attorney the opportunity to view the IOA file and prepare for John Doe G's hearing.

### D. Exhibit 3 and Exhibit 6, March 18, 2016 Communications From Vice Provost of KU's Office of Student Affairs to Plaintiff and Jane Doe 7

The following day, on March 18, 2016, Dr. Tammara Durham, Vice Provost for Student Affairs writes to Plaintiff and Jane Doe 7, sharing the resolution of the conduct cases involving John Doe G. (Proposed Exhibits 3 and 6). Dr. Durham tells Plaintiff, Jane Doe 7, and their attorney that John Doe G "has been effectively permanently expelled . . . . He was withdrawn from the University effective March 17, 2016. He is not eligible for readmission. A notation will be placed on Mr. John Doe G's transcript. Mr. John Doe has been banned from campus for a period of ten years. The no contact directive between Mr. John Doe G and you will remain in place . . . ." Exhibit 3; see also Exhibit 6 (similar language)[4].

In both letters, Dr. Durham states that if either Plaintiff or Jane Doe 7 have questions that they should reach out to her. Nothing in the Second Amended Complaint to suggest that Plaintiff, Jane Doe 7, or someone acting on their behalf did in fact reach out to Dr. Durham or anyone else at the University to ask questions about the results. More importantly, John Doe G was removed from campus, prohibited from re-enrolling and not allowed to be on campus for 10 years. Nothing in the proposed exhibits supports Plaintiff's claim that the University was deliberately indifferent because the actions taken by the University toward John Doe G had the same effect as expulsion, without a formal hearing involving Plaintiff.

Each of the proposed exhibits communicate the ultimate resolution—John Doe G was removed from the campus. While Plaintiff alleges that she was misled into believing he was expelled, the communications to her and her attorney make it clear as of March 18, 2016, she knew

---

[4] Dr. Durham also goes on to explain why she decided to resolve the matter. She explains to Jane Doe 7, who did not want the resolution to move forward as quickly, that the University was declining some of Jane Doe 7's suggested remedies—requiring John Doe G. to go through training and to apologize to her—because the University had no way to enforce those requirements on a former student. (Exhibit 6).

or should have known that John Doe G was *effectively* expelled, that he withdrew as of March 17, 2016 and that he was not eligible to be readmitted. Even if Plaintiff misunderstood Dr. Durham's March 18, 2016 letter, the facts do not support Plaintiff's claims that the University was deliberately indifferent to her when it acted to remove John Doe G from campus.

> **E. Plaintiff Does Not Have a Legal Right to Demand Particular Remedies Related to John Doe G.'s Removal.**

Notwithstanding the fact that the University clearly conveyed the terms of its agreement with John Doe G to Plaintiff, Plaintiff does not have the right "to make particular remedial demands" as to the agreement between KU and John Doe G. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648-49 (1999). The University, not Plaintiff, is the decision maker as to whether and how to resolve John Doe G's student conduct case. There is nothing in the University's decision that indicates it was deliberately indifferent toward her when it acted to remove and ban John Doe G. While the University considered the wishes of Plaintiff and Jane Doe 7, the University had to make its decision based upon what was best for the University community as a whole.

There can be no claim of misrepresentation that Plaintiff believed all of her specific remedies would be achieved when, before making its decision, the University had explained that it was the decision-maker and it would not be able to agree to all of her requests. For example, the University told Plaintiff that it could not fine John Doe G for his actions against her or add a notation about IOA's finding of sexual assault to his transcript (Exhibit 2). The University also explained to Jane Doe 7 that it could not require John Doe G to complete training or apologize to her as he was not going to be a student at the University. (Exhibit 6). The University system is a place of higher education, not a court of law, and as such has much more limited remedies. Unlike courts, the University cannot award money damages for the act of one student against another.

The University cannot convict or imprison students who violate its policies; such punitive determination is left to the criminal justice system. The most severe punishment the University can offer is to remove a student and prevent him from returning – which is what the University of Kansas did.

The decision made by the University, in which John Doe G withdrew and was not be eligible for readmission, was not deliberately indifferent as to Plaintiff or the University community. If the matter had not been resolved, the next steps would have involved Plaintiff and Jane Doe 7 revisiting their sexual assaults at separate hearings. It was not known how each hearing panel would have resolved the matter. There was a possibility that a hearing panel could have recommended lesser sanctions—such as a suspension or John Doe G not being removed from campus. There was also a possibility that the hearing panel would have disagreed with IOA's determination that the preponderance of the evidence standard was met such that John Doe G might have remained on campus. While Plaintiff seems to contend that she would have disagreed with John Doe's immediate withdrawal accompanied by no re-enrollment, her disagreement does not dictate University sanctions. The University, while considering the wishes of Plaintiff and Jane Doe 7, is the sole decision maker as to how to proceed against a student in a disciplinary hearing; not following all of Plaintiff's and Jane Doe 7's proposed remedies was not deliberately indifferent when the result was John Doe G's permanent removal from the University.

### F. John Doe G's Subsequent Position on Another University's Football Team is Not Indicia that the University of Kansas was Deliberately Indifferent.

Third, John Doe G's playing football at another university is not evidence that the University of Kansas was deliberately indifferent to Plaintiff's Title IX rights. While it is anticipated that Plaintiff will argue she should be allowed to amend because she only recently learned that John Doe G had been accepted to another university and was on their football team,

such a theory misstates the University's role. Plaintiff believes that the University of Kansas misrepresented that John Doe G's transcript would have a notation simply because another school allowed him to enroll and play on their football team.

First, there are a number of other much more plausible explanations that do not involve the University of Kansas that could account for his position on another college football team. For example, he may have enrolled at the other university at a freshman level, without providing his University of Kansas college transcript; thus, the other university would not have been aware of the transcript and its notation.[5] Another possibility is that the other university may have simply overlooked the notation on the transcript. Finally, another possibility is that the other university met with John Doe G and decided to admit him despite the notation. The University of Kansas does not know which, if any, of the above scenarios may have occurred, but the University of Kansas did not and does not have an affirmative duty to Plaintiff and/or Jane Doe 7 to ensure that John Doe G never finishes his education at another university.

### III. CONCLUSION

None of the new facts alleged support a claim of deliberate indifference by the University of Kansas. As such, Plaintiff's Motion for Leave to File a Second Amended Complaint is futile and should be denied.

---

[5] According to media reports, he was listed on the other school's football roster as a freshman instead of a junior and was not identified as having transferring from the University of Kansas, as would have typically happened.

Case 2:16-cv-02266-JTM-GEB   Document 34   Filed 10/21/16   Page 10 of 10

Respectfully submitted,

/s/ Megan K. Walawender
Michael C. Leitch, Kansas Sup. Ct. #19588
Megan K. Walawender, Kansas Sup. Ct. # 22955
Associate General Counsel and
   Special Assistant Attorney General
Room 245 Strong Hall
1450 Jayhawk Blvd.
Lawrence, Kansas  66045
Tel:  (785) 864-3276;   Fax:  (785) 864-4617
Email:  mleitch@ku.edu
E-mail:  megan.walawender@ku.edu
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I certify that on October 21, 2016, I electronically submitted this document with the Clerk of the Court using the CM/ECF system, with notice of filing generated automatically and emailed to:

Dan Curry
Sarah Brown
BROWN & CURRY, LLC
406 W. 34th Street, Suite 810
Kansas City, MO 64111
dan@brownandcurry.com
sarah@brownandcurry.com
*Attorneys for Plaintiff*

/s/ Megan K. Walawender
*Attorney for Defendant*
*University of Kansas*