## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DAISY TACKETT** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-2266-JTM-GEB** |
| | ) | |
| **UNIVERSITY OF KANSAS** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

### PLAINTIFF'S REPLY IN SUPPORT FOR MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiff sued the University of Kansas for failure to comply with Title IX. Pending is Plaintiff's motion for leave to file a Second Amended Complaint. (ECF Doc.28). In Reply to Defendant's opposition, Plaintiff submits the following:

### Timeline of Relevant Facts

**March 21, 2016**: Plaintiff filed her initial Petition in state court in the Douglas County District Court. (ECF Doc. 1-1).

**May 27, 2016:** After removal, Defendant KU filed a Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), alleging that Plaintiff and not met the federal notice pleading standards for her causes of actions. (ECF Doc. 10).

**July 1, 2016:** Plaintiff filed her Response to Defendant KU's Motion to Dismiss. (ECF Doc. 16).

**July 2, 2016:** Plaintiff filed her first Motion for Leave to Amend her Complaint providing additional facts beyond the mere "short and plain" standard of Fed. R. Civ. P. 8, and that same day filed a substantial opposition to Defendants' Partial Motion to Dismiss (ECF Doc. 17).

**July 27, 2016:** The Court granted Plaintiff leave to file her First Amended Complaint. (ECF Doc. 21).

**August 9, 2016:** Plaintiff filed her First Amended Complaint. (ECF Doc. 22).

**September 2, 2016**: Kansas City Star reports that Defendant, despite representing to Plaintiff that John Doe had been "effectively expelled," instead informed the KU football player John Doe that he would be permitted to withdraw "in lieu of expulsion," and he was then able to

immediately join a football team at a different university along with a former KU football coach.

**September 2, 2016:** Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint. (ECF Doc.25). In that motion, Defendant attached numerous exhibits (ECF Doc. 25, Exs. 1 through 4) introducing new factual contentions into the controversy, including Defendant's position that they "expelled" John Doe and that this decision absolved them of any culpability for the sexual assault Plaintiff suffered, as well as the subsequent delay and retaliation she endured at Defendant's hands. (ECF Doc. 25, p.14-15).

**September 30, 2016:** Plaintiff filed her Motion for Leave to File Second Amended Complaint (ECF Doc. 28). Plaintiff stated that she desired leave to amend the Complaint to include new allegations raised in Defendant's Second Motion to Dismiss as well as other facts that came to light in September of 2016.

**September 30, 2016:** Plaintiff filed her Response in Opposition to Defendant's second motion to dismiss. (ECF Doc. 30). Plaintiff argued that the new evidence KU introduced demonstrated deliberate indifference because it showed how the institution mislead Tackett during the Title IX process as KU told Tackett that John Doe would be expelled, but then in separate communication to John Doe, allowed him to withdraw.

**October 21, 2016**: Defendant filed its Response in opposition to Plaintiff's Motion to Amend, arguing that "most of the proposed allegations have been known to Tackett for months and such allegations are futile to Tackett's claims." (Doc. 34, p.1).

**October 21, 2016**: Defendant filed its Reply in support of its Motion to Dismiss, arguing for the first time that KU is not liable under *Simpson v. Univ. of Colorado*, 500 F.3d 1170, 1177 (10th Cir. 2007).  (ECF Doc.33). Defendant also argued that "[w]hile **the record of KU's actions is not fully developed at this early stage**, the facts that are alleged show no evidence of deliberate indifference…." (Doc.33, p.11).

**November 8, 2016:** As of this date, no scheduling order with a deadline for amending pleadings has been entered.

### New Pleaded Facts Plaintiff Seeks To Include

Plaintiff seeks to include, in the Second Amended Complaint, allegations that arise from documents KU relied upon to in its motion to dismiss Plaintiff's First Amended Complaint, as well as new allegations that first surfaced in September of 2016. These allegations include the following:

KU's IOA office first represented to Tackett in a February 23, 2016 letter that it would be recommending that John Doe G "be permanently expelled from the University of Kansas." ECF

Doc.28, Ex.1, ¶91. KU then send Tackett a March 16, 2016 email stating John Doe G would agree to an immediate expulsion. *Id.* at ¶92. On March 18, 2016, KU sent Tackett a letter stating that John Doe G "has been effectively permanently expelled from the University of Kansas. He was withdrawn from the University effective March 17, 2016" and that a notation would be placed on his transcript. *Id.* ¶94-95.   The same letter stated that this outcome "achieves everything that would have been sought during the formal hearing and the University understands that you are in agreement with the resolution." *Id.* ¶96.

KU made similar representations that John Doe G would be "expelled" with McClure. *Id.* ¶99-104. KU continues to characterize John Doe G's separation as an "expulsion" to this date. *See* ECF Doc. 25, p.12, 14, 21, 24, FN20, 34.

To John Doe G, however, KU communicated that he could withdraw from KU in lieu of expulsion – a fact concealed from McClure and Tackett. ECF Doc.28, Ex.1, ¶97-98, 106. As a result of KU's actions, no hearing was held and John Doe G subsequently was able to enroll in Indiana State University and join its football team, following a KU coach to that institution. *Id.* ¶92, 102. KU engaged in this concealment out of fear being sued by John Doe G. *Id.* ¶105, 108.

## Argument

KU essentially makes two arguments against permitting Plaintiff to amend her pleadings at the early stage in the litigation – delay and futility. But neither reason is valid here. First, there has been no unexplained delay. No discovery has been conducted; no deadlines have been set; and the sources of the facts are either from what KU interjected in its Rule 12(b)(6) motions or from what was discovered through media disclosure in September 2016. Second, as Plaintiff has argued in her responses to KU's Rule 12(b)(6) motions, her Title IX claims arising from KU's

pre-assault policies and post-assault conduct should not be dismissed; therefore, these new facts would not be futile.

Fed. R. Civ. P. 15 (a)(2) provides that a party may amend his pleadings with the court's leave, and that the "court should freely give leave when justice so requires." A party is typically granted leave to amend under this rule unless there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendment previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City & Cty.of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005). The Tenth Circuit has stated that untimeliness can be a basis for denying a Rule 15 motion; however the delay must be significant and unexplained: "Lateness does not of itself justify denial of [an] amendment," but the "longer the delay, 'the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006); *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994)(holding that eight month delay in requesting leave to amend – after a partial summary judgment had been ordered – was sufficient basis to deny a motion to leave.) *See also Boone v. TFI Family Services, Inc.*, Case No. 2:14-cv-02548-JTM (June 9, 2016)(ruling that plaintiff's desire to cure pleading deficiencies was "good cause" to grant leave to amend pleadings after scheduling order, even where "there is no question that plaintiff was late coming forward" and the case had been pending 15 months).In *Boone*, this Court noted that the plaintiffs had good cause to amend in part because they had contended that proposed amended allegations had "been known to [Defendants] all along … and that the amendment will have little or no impact on discovery." *Id.*

Leave to amend has even been granted even where leave was sought after the reply deadline for a motion to dismiss had passed. *See Birdsong v. Unified Government of Wyandotte County/Kansas, City, Kansas*, Case No. 13-2090-JAR (January 10, 2014). In *Birdsong*, following the reply deadline, plaintiffs filed a motion for leave to amend and attached a proposed a second amended complaint that "added substantial additional factual material, two new defendants, and new claims." Notably, the plaintiffs had sought four extensions of time to respond to the motion to dismiss, missed multiple deadlines, and were non-responsive to many of the arguments defendants raised in their motion to dismiss. *Id*. Judge Robinson specifically stated that:

> the Court is troubled by Plaintiff's delay in bring this motion. Plaintiffs delayed responding to the motions to dismiss for five months. … More troubling than the delay is the fact that Plaintiffs made no attempt to seek leave to file their response to the motion to dismiss out of time, nor to explain how their delay constitutes excusable neglect. Plaintiffs simply waited until the reply time passed before seeking leave to amend to add over forty pages of information to the complaint and to restyle certain counts to survive the statute of limitations defense." *Id*.

*Id.* Despite being "loathe to condone the dilatory practices" of the plaintiffs in that case, Judge Robinson declined to deny leave on the basis of delay: "There has been no deadline established in the case for filing a motion for leave to amend….Plaintiffs were still technically within the window of time to amend." *Id.*

KU agrees that this case is at an "early stage" and the facts have not yet been "fully developed." *See* ECF Doc. 26, p.13.  Indeed, even without the aid of discovery, new facts seem to arise on a monthly basis as more of KU's conduct comes to light. The federal notice pleading requirements require a "short and plain statement of the claim" Fed. R. Civ. P. 8(a)(2). After *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), defendants have sought to use Rule 12(b)(6) with more frequency, rendering Rule 8's laudable "short and plain" standard a hazard for plaintiffs. Any residual efficiency derived from Rule 8 is lost if a defendant can achieve dismissal by demanding

granular details from plaintiff while suggesting negative inferences to the Court before any discovery has even been conducted.

In the case at bar, Defendant has twice attacked the sufficiency of Plaintiff's pleadings of "deliberate indifference." Plaintiff has responded twice based upon the merits and sufficiency of her pleadings. The present request to add additional pleaded facts is necessary to include new facts contained in representations KU made during the Title IX process to Plaintiff. **These are facts that KU itself relies upon and incorporates into its second partial motion to dismiss as matters extraneous to the pleadings.** (ECF Doc. 25, Exs. 1 through 4). Therefore, KU should not, in good faith, be able to object to Plaintiff's request for leave to amend these same allegations into the pleadings. These are facts KU itself placed into issue.  These  same  facts about KU's misrepresentations, however, were only revealed as misrepresentations in September of 2016, when the media first reported a fact that KU had never before disclosed to Plaintiff or this Court: **It told Plaintiff's assailant, John Doe G, that he could withdraw from KU in lieu of being expelled.** KU conspicuously omits this pertinent fact from its argument against leave.

Discovery of this new fact makes the other proposed additions relevant. While KU, fearful of being sued by John Doe G, was informing John Doe G he could withdraw and avoid a hearing, KU was telling Plaintiff that KU would expel John Doe G, that he was "effectively expelled," and that KU had achieved everything that could be had with a hearing. What KU told Plaintiff simply was not true or consistent with what KU told John Doe G. A hearing could have resulted in an honest expulsion. KU permitted John Doe G to withdraw, and he then immediately joined a new football team at a different school along with a KU football coach.

KU admits the parties are in an early stage of the litigation, and it must admit that it was KU itself that interposed these new factual issues by raising them in its Rule 12(b)(6) motion.

KU does not challenge that the revelation that it had told John Doe G differently than Plaintiff was new as of September 2016. For this reason, KU has no basis to oppose this motion to amend.

Turning to KU's futility argument, KU has not demonstrated that the new allegations are futile. A proposed amendment is futile if the amended complaint would be subject to dismissal. *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008). To survive a motion to dismiss, a complaint must present facts, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In its opposition to the present motion, KU does not offer any explanation as to how Plaintiff's lawsuit would not survive a motion to dismiss with the new allegations – allegations that KU itself raised in its Motion to Dismiss. Instead, KU offers its own glosses as to what it meant when its employees told Plaintiff that John Doe G was "effectively expelled." KU does not attempt to explain or justify why it would tell John Doe G something entirely different; or why it would make other statements (such as representing that John Doe G was immediately expelled) to Plaintiff to lead her to believe that KU had expelled him. Instead, KU offers only negative inferences and other unpleaded facts to argue that Plaintiff's new allegations mean something else. But in gauging futility, as in reviewing a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all the factual allegations in the complaint" and "construe them in a light most favorable to the plaintiff" and "resolve all reasonable inferences in plaintiff's favor." *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996).

7

Plaintiff's proposed new allegations are further evidence that KU was deliberately indifferent to Plaintiff's Title IX rights. Plaintiff does not claim necessarily that KU's duplicity and self-serving conduct, standing alone, would support a Title IX action. However, KU's conduct here is evidence of the institution's deliberate indifference to Plaintiff's Title IX rights because it shows how KU was willing to actively mislead a Title IX victim rather than follow its own procedures, which state that a complainant is entitled to a hearing: "If IOA has not recommended and/or Student Affairs will not seek suspension or expulsion, but the complainant believes that it is an appropriate outcome, they will be given the opportunity to present their complaint to a formal hearing panel …"[1] In *Escue v. N. Okla. Coll.,* 450 F.3d 1146 (10th Cir. 2006), the Tenth Circuit articulated the three elements for a Title IX claim based on the school's conduct after the assault:

> (1). . . the [school] remains deliberately indifferent to acts of harassment of which it has actual knowledge, (2) the harassment was reported to an appropriate person . . . with the authority to take corrective action to end the discrimination, and (3) the harassment was so severe, pervasive and objectively offensive that it. . . deprived the victim of access to the educational benefits or opportunities provided by the school.

*Ross v. University of Tulsa*, Case No. 14-CV-484-TCK-PJC (N.D. Okla., April 15, 2016) (*quoting Escue,* 450 F.3d at 1152 (citations omitted)). In *Ross*, the federal district court observed that "[i]ntentionally biased student conduct proceedings, or clearly unreasonable methods of handling student reports of sexual violence, seem to fit within the parameter of Title IX 'deliberate indifference' as outlined in *Gebser* and *Davis.*" Plaintiff seeks to amend her Complaint to include direct evidence of "intentionally biased" and "clearly unreasonable" methods of resolving her Title IX complaint. KU manipulated the system to save itself from a lawsuit by the football player, not to resolve Plaintiff's Title IX complaint. Because Plaintiff has

---

[1] https://policy.ku.edu/sites/policy.ku.edu/files/Nonacademic%20Misconduct%20Procedures_8.22.2016.pdf, p.13.

adequately pled liability for KU under *Escue* for its post-harassment treatment of Plaintiff (including delaying her hearing, refusing to issue in a timely manner to a twice-accused student an instruction not to contact her, refusal to even investigate complaints about Plaintiff's rowing coach's harassment and retaliatory exclusion of Plaintiff from educational opportunities), her amendment here would not be futile.

The amendments also would not be futile because Plaintiff has also plausibly pled facts meeting the elements of a Hostile Educational Environment claim according to *Simpson v. University of Colorado Boulder*, 500 F.3d 1170 (10th Cir. 2007): KU is liable if it is (1) a "funding recipient" and (2) possesses an "official policy" of "deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient." *Id.* at 1178; *C.T. v. Liberal School Dist.*, 562 F.Supp.2d 1324, 1338-39 (D.Kan. 2008); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  Liability under *Simpson* targets KU's conduct before the sexual harassment – and importantly, specifically does not require Plaintiff to show that KU knew John Doe G specifically was a threat to Plaintiff. *Simpson,* 500 F.3d at 1177 ("notice" requirement under *Gebser* not required).

Plaintiff has already pled in her First Amended Complaint that KU is the recipient of federal grant funds. ECF Doc. 22, ¶4. KU has an official policy of placing athletes, in particular football players, in KU's Jayhawker Towers, where they receive less supervision than other residence hall options. *Id.*, ¶86. KU failed to provide adequate supervision, warnings, training, guidance and education to its athletes and, in particular, to football players residing at Jayhawker Towers. *Id.* ¶88. KU knew sexual assaults occurred at a higher rate in Jayhawker Towers, that it sexual assaults on campus were the biggest problem the campus faced. *Id.* ¶11-14, 87. The likelihood of such misconduct was so obvious that KU's failure to supervise amounted to

deliberate indifference to Plaintiff's rights. *Id.* ¶89. Despite this knowledge, in 2014-2015, KU advertised that its residence halls were a "safe community" and that "Security is a priority." *Id.* ¶16. Along with this policy of showing football players a good time by concentrating them in a dorm with less supervision, KU also had a policy of using female athletes to help entertain football recruits in hotels just off campus. *Id.* ¶70, 72. These policies are what set the stage and lead to the sexual assault of Plaintiff by KU's football player at KU's Jayhawker Towers. *Id.* ¶11, 20.

As in *Simpson*, where summary judgment was found to be inappropriate, Plaintiff pled that KU "sanctioned, supported, even funded a program (showing recruits a 'good time') that, without proper control, would encourage young men to engage in opprobrious acts" *Simpson* at 1177, 1185. Deliberately concentrating its football players in a dormitory with less supervision, and where KU had actual knowledge there was ongoing and worsening problem with sexual assaults of women, is precisely the kind of policy *Simpson* targets.

KU does not explain in its opposition to the present Motion to Amend how Plaintiff's *Simpson* claim is futile. However, KU did address – for the first time – in its Reply in Support of its Motion to Dismiss (ECF Doc. 33, p. 6) that Plaintiff cannot establish that her assault occurred at a "University-sanctioned event."   Plaintiff will therefore respond to some of KU's new arguments as to why a Title IX claim under *Simpson* would be presumably futile.

First, there is no requirement under *Simpson* that the assault take place at a KU-sanctioned program – and even if there were such a requirement, her rape did occur at such a university-sponsored program: Plaintiff's rape took place in KU's dormitory apartment, at the hands of KU's football player, in a dorm where KU intentionally concentrated football players to offer them the perk of less supervision. KU sanctioned, supported and funded this policy of

offering its players this perk, absolutely knowing the price would be paid by KU's female students, who would be more likely to be sexually assaulted as long as KU continued the practice.

KU also argues extraneous facts when it states that Plaintiff's *Simpson* claim should be dismissed because – despite Plaintiff's pled facts that KU knew its policy was dangerous, that its officials made public comments recognizing the problem, that its own statistics demonstrated the problem, and that the media accounts most assuredly revealed the full extent of the issue – KU's officials still did not know that women were getting raped every year at its Jayhawker Towers. (ECF Doc. 33, p. 9). KU similarly cites the numerous allegations of sexual assault against Donald Trump as evidence that there was nothing KU could do to stop deliberately concentrating its football players in a dormitory KU intentionally provided with less supervision. *Id.* But KU is arguing its own spin on the pleadings, which cannot aid it in arguing Plaintiff's claims are futile. Plaintiff's pleadings must be taken as true and all inferences resolved in Plaintiff's favor.

KU's authority for the dismissal of Plaintiff's *Simpson* claim is inapposite. *Simpson* held that where the university implements a policy that shows deliberate indifference to the victim, no actual knowledge of the specific attacker's propensity to harm is necessary. *Simpson* at 1177. KU's arguments continuously confuse this important distinction between *Simpson* and *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 289-90 (1998).[2]

For instance, KU cites *Facchetti v. Bridgewater Coll.*, No. 5:15-CV-00049, 2016 WL 1259415, at *8(W.D. VA. Mar. 30, 2016) as authority for the necessity to plead actual, specific knowledge by KU of its football player's threat against Plaintiff. But in that case, the district court specifically stated that its Circuit did not follow *Simpson*. KU similarly relies on *Doe v.*

---

[2] Plaintiff explains the difference between *Simpson* liability and *Gebser* liability in her Response to KU's second partial Motion to Dismiss, ECF Doc. 30, p.12.

*Blackburn Coll.*, NO. 06-3205, 2012 WL 640046, at *9 (C.D. Ill. Feb. 27, 2012) and *Hansen v. Bd. Of Trs. of Hamilton Southeastern Sch. Corp.*, 551. F.3d 599, 605-606 (7th Cir. 2008) to argue Plaintiff must plead and prove KU actually knew its football player was going to sexually assault Plaintiff. ECF Doc. 33, p.9. But these two cases once again do not address *Simpson* liability for dangerous policies. Those two cases are talking about liability under *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 289-90 (1998) for an assault by a teacher on a student. *Hansen* at 606. KU commits the same reasoning flaw in its citation to *Ross v. Corporation of Mercer University*, 506 F.Supp.2d 1325, 1357 (M.D. Ga. 2007).

Committing the same error, KU also cites *Moore v. Regents of the Univ. of California*, No. 15-CV-05779-RS, 2016 WL 4917103, at *6 (N.D. Cal. Sept. 15, 2016) to argue that Plaintiff must plead KU had "specific knowledge of a heightened risk of sexual assault either by John Doe G or in this particular context in which Ms. Moore's assault occurred." However, in *Moore*, the Court observed that the plaintiff "does not allege an affirmative institutional decision or official school policy" leading to discouraging victims from filing complaints, and so the Court granted the motion to dismiss with leave to amend. Contrary to the *Moore* situation, Plaintiff has not only pled KU had an official policy of packing football players into a dorm KU deliberately – they even advertised it – left unsupervised, she has provided ample factual allegations showing her *Simpson* claim is otherwise plausible.

KU's culpability under *Simpson* lies in sponsoring a policy of placing football players in a dorm with less supervision where KU knew (it had hard, statistical evidence) that sexual assaults were more likely to take place. Under *Simpson*, KU is liable for its policy that put John Doe G in the position to prey upon Daisy Tackett and Sarah McClure. KU cites *Karasek v. Regents of the Univ. of California*, No. 15-CV-03717-WHO, 2015 WL 8527338, at *9 (N.D. Cal.

12

Dec. 11, 2015) to suggest that Plaintiff's pleadings do not substantiate a *Simpson* claim. But even KU's gloss of *Karasek*, if one compares it to what Plaintiff has pled, shows that Plaintiff has met the pleading standard. KU states that *Karasek* distinguished the facts of its own case from *Simpson* by observing that *Simpson*

> [i]nvolved a school's prior knowledge of a 'serious risk of sexual harassment and assault' within a specific context (football recruiting efforts) by a particular group of persons (football players and recruits)" and the school "not only failed to properly supervise the recruiting efforts, it supported and funded them, despite knowing that, without proper control, they would 'encourage' sexual harassment and assault."

Doc. 33, p.5 (quoting *Karasek* at *9).

The facts pled in this case match the *Simpson* pattern as summed up by *Karasek*. Plaintiff has pled that her case involves KU's prior knowledge of a serious risk of sexual harassment and assault within the specific context of the athletic dorm called the Jayhawker Towers involving football players (*See* ECF Doc. 22, ¶11-14, 86, 87); KU failed to properly supervise the Jayhawker Towers, failed to train, warn, guide or supervise adequately the football players at Jayhawker Towers (*Id.*, ¶68); the likelihood of sexual harassment was so obvious that KU's decision to not supervise amounted to deliberate indifference (*Id.*, ¶69); KU not only failed to supervise them, it was KU's official policy to deliberately place the football players in Jayhawker Towers where they would receive less supervision; (*Id.*, ¶66); KU had a "policy of placing KU athletes and football players in the Jayhawker Towers knowing that they would receive less supervision, and knowing that there was a high likelihood of sexual misconduct occurring." (*Id.*, ¶94)

For these reasons, Plaintiff has pled a plausible claim for Title IX hostile educational environment under *Simpson* that would hold KU accountable for KU's policies that chose to

offer football players the perk of living in a less supervised dorm, a policy that was deliberately indifference to the greater incidence of sexual assaults KU knew would ensue.

<u>Conclusion</u>

There is no valid basis for KU's opposition to this motion to amend. KU's own argument affirms that the case is in the early stages and that there is much evidence to develop regarding KU's conduct. No discovery has taken place; no deadlines have been set; and the allegations Plaintiff seeks to include in the new complaint are facts that KU raised in its own Motion to Dismiss or otherwise were revealed in September of 2016. Plaintiff's motion is therefore timely.

Plaintiff's motion is also not futile. Plaintiff has adequately stated claims under Title IX under *Escue* and *Simpson*. Plaintiff has also adequately stated claims for Retaliation under Title IX. Defendant KU provides this court with no legal reason in its opposition to the present motion to find that Plaintiff has not pled sufficient facts to show her claims are plausible. For these reasons, Plaintiff's timely request to amend her complaint would not be an exercise in futility.

WHEREFORE, Plaintiff requests that the Court grant her leave to file her Second Amended Complaint.

<div style="margin-left:40%">

Respectfully Submitted,


/s/ Dan Curry_____
Sarah A. Brown, KS# 12130
Dan Curry, KS#22750
Brown & Curry, LLC
406 West 34th Street, Suite 810
Kansas City, MO 64111
(816) 756-5458
(816) 666-9596 (FAX)
sarah@brownandcurry.com
dan@brownandcurry.com

ATTORNEYS FOR PLAINTIFF

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2016 the foregoing document was served by the Court's electronic filing system upon the following parties of record:

Michael C. Leitch
Megan K. Walawender
University of Kansas
Office of the General Counsel
1450 Jayhawk Blvd., 245 Strong Hall
Lawrence, Kansas 66045
Tel: (785) 864-3276; Fax: (785) 864-4617
mleitch@ku.edu
megal.walawender@ku.edu
ATTORNEYS FOR DEFENDANT

<div style="text-align: right;">

/s/ Dan Curry
Attorney for Plaintiff

</div>